## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHAIM ROSENFELD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ESTERLINE TECHNOLOGIES CORPORATION, CURTIS C. REUSSER, MICHAEL J. CAVE, MICHAEL J. COVEY, DELORES M. ETTER, ANTHONY P. FRANCESCHINI, PAUL V. HAACK, MARY L. HOWELL, SCOTT E. KUECHLE, and NILS E. LARSEN,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMAND</u> |

Plaintiff Chaim Rosenfeld ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

### NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Esterline Technologies Corporation ("Esterline" or the "Company") against Esterline and the members of Esterline's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Esterline will be acquired by TransDigm Group

Incorporated ("TransDigm") through its wholly owned subsidiary Thunderbird Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On October 10, 2018, Esterline and TransDigm issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated October 9, 2018 (as amended on October 10, 2018, the "Merger Agreement") to sell Esterline to TransDigm. Under the terms of the Merger Agreement, each Esterline stockholder will receive $122.50 in cash for each share of Esterline common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $4.0 billion, including the assumption of debt.

3. On November 7, 2018, Esterline filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Esterline stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background process leading to the Proposed Transaction; (ii) potential conflicts of interest faced by Company insiders' and one of the Company's financial advisors, Evercore Group L.L.C. ("Evercore"); and (iii) the valuation analyses prepared by one of the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman"), in connection with the rendering of its fairness opinion. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Esterline stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Esterline's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act

violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Esterline.

9. Defendant Esterline is a Delaware corporation, with its principal executive offices located at 500 108th Avenue NE, Bellevue, Washington 98004. The Company is a specialized manufacturing company principally serving aerospace and defense customers. Esterline's common stock trades on the New York Stock Exchange under the ticker symbol "ESL."

10. Defendant Curtis C. Reusser ("Reusser") has been President and Chief Executive Officer ("CEO") of the Company since October 2013 and served as Chairman of the Board since March 2014.

11. Defendant Michael J. Cave ("Cave") has been a director of the Company since

November 2015.

12. Defendant Michael J. Covey ("Covey") has been a director of the Company since May 2017.

13. Defendant Delores M. Etter ("Etter") has been a director of the Company since 2010.

14. Defendant Anthony P. Franceschini ("Franceschini") has been a director of the Company since 2002.

15. Defendant Paul V. Haack ("Haack") has been a director of the Company since 2006.

16. Defendant Mary L. Howell ("Howell") has been a director of the Company since 2011.

17. Defendant Scott E. Kuechle ("Kuechle") has been a director of the Company since 2012.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Esterline common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

21. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of November 1, 2018, there were 29,488,510 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Esterline or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

22. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

23. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

24. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

25. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with

respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

26.     Esterline, formed in 1967, is a leading specialized manufacturing company principally serving aerospace and defense customers. The Company operates in three segments: Avionics & Controls, Sensors & Systems, and Advanced Materials.

27.     Operations within Esterline's Avionics & Controls segment focus on technology interface systems for commercial and military aircraft and similar devices for land- and sea-based military vehicles, integrated cockpit systems, display technologies for avionics, training and simulation markets, secure communications systems, specialized medical equipment, and other high-end industrial applications.

28.     The Sensors & Systems segment includes operations that produce high-precision temperature and pressure sensors, specialized harsh-environment connectors, electrical power distribution equipment, and other related systems principally for aerospace and defense customers.

29.     The Company's Advanced Materials segment focuses on process-related technologies including high-temperature elastomer products used for a wide range of military and commercial aerospace purposes, insulation materials and combustible ordinance and electronic warfare countermeasure products.

30.     On March 15, 2018, Esterline announced it had completed the sale of its Kirkhill engineered elastomer business to TransDigm for $50 million. The Kirkhill business produces specialty seals and other rubber components primarily for aerospace and defense markets.

31.     On May 3, 2018, the Company announced its second quarter of fiscal 2018

financial results. For the quarter, revenue was $517.6 million, a 1.7% increase compared to the second quarter of fiscal 2017. In the press release announcing the quarter's financial results, defendant Reusser highlighted the Company's successes, noting:

> Esterline's baseline operational performance is on track with our expectations through the first half of fiscal 2018. . . . We are gaining traction with our customers and healthy booking activity has driven our backlog to new highs. In addition, a large customer has asked us to work closely with them on a new development effort. We had not contemplated the required investment for this new development activity in our original plans for the year and we are adjusting our outlook accordingly. These trends are encouraging and are laying a foundation for progress that should support long-term growth.
>
> The company is continuing to produce excellent cash flow, allowing us to remain flexible in executing our disciplined capital allocation strategy. From a strategic perspective, the sale of the Kirkhill business, completed during the second quarter, positions our Advanced Materials businesses to deliver expanded operating margins and improved results going forward and led to an increased guidance range for free cash flow.

32.     On June 11, 2018, Esterline lowered its earnings expectations for the third fiscal quarter of 2018 to $0.80 to $0.90 per diluted share, due to the operational impact of a recently concluded strike at its Canadian avionics facility.

33.     Esterline reported its third quarter of fiscal 2018 financial results on August 2, 2018, which exceeded the Company's revised earnings expectations. For the quarter, the Company reported earnings of $1.00 per diluted share. Commenting on the quarter's financial results, defendant Reusser stated:

> We completed the quarter ahead of our most recent expectations. . . . Our avionics team successfully mitigated a significant portion of the effect of a previously reported 13-day work stoppage in Montreal. We expect to recapture the balance of the impacted sales volume in the fiscal fourth quarter. In addition, other Esterline businesses fulfilled more orders in the third quarter than planned, shifting some sales from the fourth quarter into the third. We remain focused on driving revenue growth across our global operations, supported by a very healthy backlog and year-to-date book-to-bill ratio of 1.15.

**The Sale Process**

34. On March 26, 2018, a company referred to in the Proxy Statement as "Party A" approached a member of Esterline's executive management to convey Party A's potential interest in a strategic alternative with the Company.

35. On May 12, 2018, TransDigm contacted Goldman to discuss TransDigm's interest in a potential acquisition of the Company.

36. Throughout May and June 2018, the Board periodically met to review the Company's 2018 strategic plan.

37. On June 14, 2018, TransDigm submitted an indication of interest to Goldman to acquire Esterline for $94.50 per share in cash.

38. At a June 28, 2018 Board meeting, the Board directed Company executive management and Goldman to prepare a form of non-disclosure agreement ("NDA") and a communications plan in connection with outreach to financial and strategic third parties.

39. Between July 2 and August 3, 2018, Goldman and the Company contacted 21 parties, including TransDigm and Party A, and entered into 12 NDAs with interested parties. The Proxy Statement fails to disclose whether these NDAs include standstill provisions that are still in effect and operate to preclude each of these parties from submitting a topping bid for the Company.

40. Between August 16 and August 17, 2018, Goldman received indications of interest for 100% of the Company from TransDigm at $100.50 per share in cash, Party A at a bid range of $95-$98 per share in cash, five additional parties at prices ranging from $95 to $110 per share in cash, and two additional parties that did not include a bid price. Goldman also received a written indication of interest for Esterline's Connection Technologies business at a bid range of

$800–$870 million and for the Sensors & Systems business at a bid range of $1.45-$1.575 billion.

41. Throughout the remainder of August 2018 and September 2018, Esterline held discussions with each of the interested parties.

42. On October 9, 2018, TransDigm submitted a best and final offer of $122.50 per share.

43. That evening, Goldman rendered its fairness opinion and the Board approved the Merger Agreement. Later that evening, Esterline and TransDigm executed the Merger Agreement.

**The Proposed Transaction**

44. On October 10, 2018, Esterline and TransDigm issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> CLEVELAND, OH and BELLEVUE, WA., October 10, 2018 -- TransDigm Group Incorporated (NYSE: TDG) and Esterline Technologies Corporation (NYSE:ESL) announced today that they have entered into a definitive agreement under which TransDigm will purchase all of the outstanding shares of common stock of Esterline for $122.50 per share in cash, which represents a premium of 38% to Esterline's closing price on October 9, 2018, or a total transaction value of approximately $4.0 billion including the assumption of debt. The transaction has been approved by the Boards of Directors of both companies. TransDigm expects the acquisition to be financed primarily through cash on hand and the incurrence of new term loans, and currently anticipates the acquisition to be modestly accretive to TransDigm's adjusted earnings per share within the first year of ownership.
>
> The acquisition of Esterline expands TransDigm's platform of proprietary and sole source content for the aerospace and defense industries, including significant aftermarket exposure. Headquartered in Bellevue, Washington, Esterline is an industry leader in specialized manufacturing for these sectors with anticipated fiscal year 2018 revenue of approximately $2.0 billion. The company consists of 28 business units organized across eight platforms to deliver specialty aerospace, defense and industrial products. The company employs over 12,500 employees in more than 50 operating locations throughout the world.

Esterline has attractive platform positions in both the OEM and aftermarket and has substantial content on many important commercial aircraft variants, many regional and business jet aircraft and major defense platforms.

"We are pleased to have reached agreement to acquire a collection of businesses that fit well with our focused and consistent strategy," stated W. Nicholas Howley, TransDigm's Executive Chairman. "Esterline's core aerospace and defense business consists of primarily proprietary, sole source products with significant and growing aftermarket exposure. We view this as highly complementary to our existing business. We are confident that the combination of Esterline's leading positions and our proven track record of driving performance will enable us to deliver the private equity-like returns our investors have come to expect from this investment."

Kevin Stein, TransDigm's President and Chief Executive Officer stated, "We are excited to acquire Esterline's wide range of complementary products and see a path to create significant value for TransDigm shareholders, customers and stakeholders. Upon completion of the transaction, Bob Henderson, TransDigm's current Vice-Chairman, will oversee the integration and operations of Esterline. Mr. Henderson has been a key member of TransDigm's management team for close to 25 years and has overseen the integration of numerous acquisitions during this period, including our recent acquisition of Kirkhill from Esterline."

\* \* \*

The acquisition will be financed through a combination of existing cash on hand of approximately $2 billion and the incurrence of new term loans. TransDigm has obtained commitments for the full amount of financing required for the transaction. Immediately upon closing, the combined company will maintain the financial flexibility to meet any anticipated operating, acquisition, and other opportunities that may arise though a combination of cash on hand, undrawn revolver, and under certain circumstances, additional availability under its credit agreement.

The transaction is subject to customary closing conditions, including Esterline stockholder approval and the receipt of required regulatory approvals. The companies expect to complete the transaction in the second half of calendar 2019.

**Insiders' Interests in the Proposed Transaction**

45. Esterline and TransDigm insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public shareholders. The Board and the Company's executive

officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Esterline.

46. Esterline's directors and executive officers stand to reap substantial financial benefits for securing the deal with TransDigm. Pursuant to the Merger Agreement, all outstanding Company options, restricted stock units, and performance stock units will vest and be converted into the right to receive the Merger Consideration. The following table sets forth the estimated amounts that each of the Company's directors and executive officers will receive upon consummation of the Proposed Transaction:

**Merger Proxy Beneficial Ownership Table**
(as of November 1, 2018)

| | Shares (#) | Value of Shares ($) [1] | Vested Company Options (#) [2] | Value of Vested Company Options($) [3] | Unvested Company Options (#) [4] | Value of Unvested Company Options ($) [5] | Company RSUs (#) [6] | Value of Company RSUs ($) [7] | Company PSUs (#) [8] | Value of Company PSUs ($) [9] | Total Value ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Board of Directors** | | | | | | | | | | | |
| Michael J. Cave | 4,894.000 | $ 599,515 | — | $ — | — | $ — | — | $ — | — | $ — | $ 599,515 |
| Michael J. Covey | 2,573.000 | $ 315,193 | — | $ — | — | $ — | — | $ — | — | $ — | $ 315,193 |
| Delores M. Etter | 15,200.000 | $1,862,000 | — | $ — | — | $ — | — | $ — | — | $ — | $ 1,862,000 |
| Anthony P. Franceschini | 21,937.000 | $2,687,283 | — | $ — | — | $ — | — | $ — | — | $ — | $ 2,687,283 |
| Paul V. Haack | 26,696.000 | $3,270,260 | — | $ — | — | $ — | — | $ — | — | $ — | $ 3,270,260 |
| Mary L. Howell | 14,923.000 | $1,828,068 | — | $ — | — | $ — | — | $ — | — | $ — | $ 1,828,068 |
| Scott E. Kuechle | 8,225.000 | $1,007,563 | — | $ — | — | $ — | — | $ — | — | $ — | $ 1,007,563 |
| Nils E. Larsen | 5,713.000 | $ 699,843 | — | $ — | — | $ — | — | $ — | — | $ — | $ 699,843 |
| **Named Executive Officers** | | | | | | | | | | | |
| Curtis C. Reusser | 42,468.000 | $5,202,330 | 64,450 | $ 1,999,200 | 61,950 | $2,347,565 | 27,000 | $3,307,500 | 11,800 | $ 1,445,500 | $14,302,094 |
| Robert D. George [10] | 15,830.000 | $1,939,175 | 87,400 | $ 5,330,267 | 17,300 | $ 653,215 | 3,100 | $ 379,750 | 2,500 | $ 306,250 | $ 8,608,657 |
| Marcia J. Mason [11] | 7,447.890 | $ 912,367 | 54,600 | $ 3,152,391 | 11,600 | $ 437,908 | 5,400 | $ 661,500 | 2,389 | $ 292,639 | $ 5,456,804 |
| Roger A. Ross | 3,369.243 | $ 412,732 | 11,550 | $ 511,821 | 13,050 | $ 536,871 | 5,300 | $ 649,250 | 2,283 | $ 279,708 | $ 2,390,383 |
| Albert S. Yost | 9,340.910 | $1,144,261 | 12,150 | $ 378,505 | 12,850 | $ 486,622 | 6,000 | $ 735,000 | 2,669 | $ 327,007 | $ 3,071,394 |
| **Other Executive Officers** | | | | | | | | | | | |
| Paul P. Benson | 1,661.580 | $ 203,544 | 6,400 | $ 94,010 | 6,500 | $ 199,465 | 2,400 | $ 294,000 | 1,092 | $ 133,729 | $ 924,748 |
| Stephen M. Nolan | — | $ — | — | $ — | 21,100 | $1,114,080 | 8,450 | $1,035,125 | — | $ — | $ 2,149,205 |
| Donald E. Walther | — | $ — | — | $ — | 11,380 | $ 543,964 | 3,935 | $ 482,038 | — | $ — | $ 1,026,002 |

**The Proxy Statement Contains Material Misstatements or Omissions**

47. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Esterline's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

48. Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information concerning: (i) the background process leading to the Proposed Transaction; (ii) potential conflicts of interest faced by Company insiders' and one of the Company's financial advisors, Evercore's; and (iii) the valuation analyses prepared by one of the Company's financial advisors, Goldman, in connection with the rendering of its fairness opinion. Accordingly, Esterline stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Background Process of the Proposed Transaction*

49. The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

50. In connection with the sale process, at a June 28, 2018 Board meeting, the Proxy Statement sets forth:

> Following further discussion, the Board directed Company executive management to continue to work with representatives of Goldman Sachs and Skadden on matters related to the process, including preparation of a form of non-disclosure agreement ("NDA") and a communications plan. The Board then directed representatives of Goldman Sachs to proceed with the outreach to the financial and strategic third parties the Board had identified and authorized Goldman Sachs to approach.
>
> Between July 2, 2018 and August 3, 2018, representatives of Goldman Sachs or the Company contacted 21 third parties, including TransDigm and Party A, and the Company entered into 12 NDAs. Beginning on July 15, 2018, confidential information and supplemental information packages were distributed to 12 third parties in the process through a virtual data room.

Proxy Statement at 34. The Proxy Statement fails, however, to expressly indicate whether the NDAs Esterline entered into with each of these 12 potential acquirers includes standstill provisions that are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding each and every one of these potential bidders from making a topping bid

for the Company.

51.     The disclosure of the existence and terms of any confidentiality agreements Esterline entered into with any other party is crucial to Esterline stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

52.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' and Evercore's Potential Conflicts of Interest***

53.     First, the Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Esterline insiders.

54.     For example, the Proxy Statement states, "[a]s of the date of this proxy statement, none of our executive officers has entered into any agreement with TransDigm or any of its affiliates regarding employment with the surviving corporation or one or more of its affiliates." *Id.* at 53.

55.     The Proxy Statement, however, fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between TransDigm and Esterline's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of TransDigm's prior proposals or indications of interest mentioned management retention in the combined company or the purchase of or participation in the equity of the surviving corporation.

56.     Second the Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Evercore.

57. The Proxy Statement fails to disclose the terms of the engagement agreement entered into by the Company and Evercore, including the amount of compensation Evercore received or will receive in connection with its engagement. The Proxy Statement also fails to disclose whether Evercore has performed past services for Esterline or TransDigm, as well as the timing and nature of such services and the amount of compensation received by Evercore for such services.

58. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

59. The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Directors and Executive Officers of ESL in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Goldman's Financial Analyses*

60. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Esterline's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Esterline's stockholders.

61. With respect to Goldman's *Illustrative Present Value of Future Share Price Analyses*, the Proxy Statement fails to disclose: (i) the estimated fully-diluted shares of Company

common stock outstanding; and (ii) quantification of the inputs and assumptions underlying the discount rate of 11%.

62. With respect to Goldman's *Illustrative Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the terminal year estimate of the free cash flow to be generated by Esterline utilized to derive the terminal value; (ii) the range of illustrative terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; and (iv) Esterline's net debt and minority interests as of September 28, 2018, as provided by Company management and utilized by Goldman in its analysis.

63. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

64. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

65. Plaintiff repeats all previous allegations as if set forth in full.

66. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

67. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the background process leading to the Proposed Transaction, potential conflicts of interest faced by Company insiders and one of the Company's financial advisors, and the financial analyses performed by one of the Company's financial advisors. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

68. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

69. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

70. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

71. Plaintiff repeats all previous allegations as if set forth in full.

72. The Individual Defendants acted as controlling persons of Esterline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Esterline, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

75. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

76. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

77. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Esterline's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Esterline, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Esterline stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 29, 2018

**O'KELLY ERNST & JOYCE, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel.: (302) 778-4000
Email: rernst@oelegal.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*